Mr. Hamill, I was just trying to cheer you up. Good afternoon, your honors. I represent the defendant, Appelant Juan Trent Nesbit, and I'm here on my petition for this petition. The issue here is simply whether or not, it's only the third issue in the briefs, and that is whether the defendant received ineffective assistance at counsel because after he was arrested on an MSR, an MSR, I'm sorry, a release violation MSR, he failed to surrender his bond in this case, which subsequently resulted in the defendant not receiving credit for about at least seven months that he spent in custody, and it may have been as long as eight months, depending on when counsel discovered that he had been arrested. The first thing I want to bring up is that this petition we're hearing obviously was filed pursuant to this court's decision, People v. Centennial, and I would like to point out that right now, the majority opinion in this case is actually less favorable to the defense than is the dissent in Centennial, and at a minimum, I would like this court to reconsider this opinion in light of even the dissent in Centennial, because that at least left open the possibility that a defense counsel could be ineffective for failing to maximize the defendant's pretrial credit. Lincoln Centennial just said my petition was needed more record, right? Right. Right. No, as I read the majority opinion here, I see it as you can't find him to be ineffective for failing to do this no matter what. I think that both positions in Centennial are correct, that it can be ineffective assistance to counsel to not maximize pretrial credit. It's essentially the same as failing to offer mitigation as sentencing and resulting in a longer sentence. Seven months of this defendant's life that he's had to spend in prison as a result of this, that he would otherwise not have had to serve, if counsel somehow made a mistake that would cause the defendant to serve seven extra months in prison for some reason, that would clearly be ineffective assistance to counsel. With relation to the facts in this case, which attorney do you think is ineffective? I believe it would have been the public defender's office at the time, because that would have been who represented because in the time frame that we know that the defendant was in custody, that it became known that he was in custody of the Department of How did the public defender in this case learn that his client was in custody? Well, we don't know that yet, and that's why I asked this court to remand the cause to determine when and how the public defender did learn that. What we do at a minimum is that in early July of 2007, the defendant wrote a letter to the court. June 7th. June 7th. Or is that the day that he, well, whatever the date is, yeah. And that's at the point, at that point I believe he was represented by the public defender. So, I believe. The letter you write is June 21st. June 21st, okay. And I believe that's filed with the court in early July. So at that point, well I think we know at that point he would have known. Prior to that, that's why I asked the court to remand the case. It's somewhere, it may or may not have found out somewhere between June 7th and early July when the letter's filed. But even if you think the worst case scenario for the defense, that's early July, this letter's on file, the defense counsel has to know about it then, and they start bringing the defendant in from prison at that point. And that's still June 6th. He came in on October 21st of 2007, and he had new counsel. He had private counsel at that time. So that's why I'm asking you, who was ineffective? Based on this record, I'm not sure it's clear that the public defender knew he was in custody. We know he wrote a letter to the court. We don't know what the public defender received or if he received it. I think the trial court forwarded it to the public defender. And then October 26th, he appears with private counsel, so we know private counsel knew he was in custody because he was there in court with them. But private counsel didn't do anything. Well, I think at the point when the letter was forwarded to the public defender, and this is also why I asked for a remand, is because this could be hashed out. Well, how do we know that the public defender and Mr. Nesbitt didn't talk about it, and the public defender said, hey, if you've got your bond, maybe you can hire private counsel and they'll just do a bond assignment. It might help you get private counsel. Right, and that brings up the other question in this case, is whether or not you can determine from essentially a blank record. Whose obligation is it to give us the record to find ineffective assistance? Well, that would be the defense obligation. And I would agree with the State and with Justice Schmitt's opinion in Centennial that 99% of the time, in an ineffective assistance to counsel case, this is better raised in a PC, and it's better raised because you need to know something, usually. Now, what makes this case unique is that this is something that there just is no good reason not to do this. And the example that you brought up there, Justice Wright, is the using the bond assignment to hire an attorney, you still have the money. If you surrender the bond, you still have the money. And so the money can still be used to hire an attorney. It's really, and I have very limited experience in firefighters, but from that little bit I can tell you as an officer of the court, you would rather have cash than a bond assignment. So it would be better for the defendant to surrender the bond. He's in prison, one way or the other, he's going to be in prison as long as the prison is keeping him. He's either going to receive credit in this case, or he's not going to receive credit in this case. Do you see any distinction in Centennial? It was a recap bond, and it is pretty easy to surrender to those. It just takes a stroke of a pen. There's no money refunded, no money that you could use later to retain private counsel. I really think Centennial can be distinguished because it was a recap bond in that case. Well, I think that the fact that it's a recap bond versus the cash bond here, it may be that it would be more of a hassle, but it's still some amounts of the defendant's time in prison versus not. And whether or not it was a hassle to get the money out and get it back in, it probably is a little bit more time consuming than it is to do a recap bond, because you don't actually have to mail a check somewhere. But beyond that, we're not talking about more than a couple days that the defendant would have to be inconvenienced to surrender his cash bond. So given the alternative, which is sit in prison and not receive credit for seven months, it seems like there would not be a good strategic reason not to do this. I just have a question regarding whose responsibility it is. Sometime in June of 2007, this defendant was appointed a public defender, correct, for the underlying charge? That's correct. And wouldn't you assume or wouldn't you expect an attorney to have some kind of contact with this client over the course of the next six or seven months? You would. You would. And granted, sometimes in these situations they think clients can disappear, and a lot of times it's difficult. I don't know how hard it was, but yeah, in this period of time, especially when the letter comes to the court, and I believe there's a missed court date in there too, so they know there's something wrong. And the letter comes to the court saying, hey, I'm in prison now. Yeah, at that point, counsel has to be aware of that and has to want to contact the defendant and should at that point surrender his bond because he's not receiving any benefit from it anymore. He's going to be in custody on this other case until the Department of Corrections says otherwise. And that's actually something that I think distinguishes this case from Centennial in the other direction, is that in this case, in Centennial, the defendant was picked up on a separate offense, could have gotten out. Here he's on an MSR violation. There's no way out of there except that the decision of the Department of Corrections. So this defendant had less reason to believe that he could be let out on the other charge than most other defendants. So even more reason in this case to go ahead and surrender the bond and start receiving credit for this time he was in custody. Well, isn't this case, I mean, one of the things that distinguishes it, again, from Centennial is that this defendant's arrest for violating MSR relates directly to this offense. That's correct. So that there is no other reason that he is in jail other than this arrest precipitates the charge of violating his MSR. Right. Yeah. And so, yeah, he's essentially, for all intents and purposes, he's in custody because of things he did to create this case. So, you know, although it's a separate case because it's the MSR. So this is just, you know, it's an unusual situation that a defendant, you know, there really is no good reason not to do something for a defense counsel, but this is one of those situations. And so I think the appropriate thing to do here is to find an effective assistance to counsel and to remand the cause to the trial court to determine when the defense counsel became aware that the defendant was in custody and to award the defendant credit for that time. When private counsel was present at sentencing in this case, did private counsel request credit for time, sir? I believe, I don't recall if there was a request made on the record. The defendant was awarded time served from the date of his jury trial. And I don't believe there was a request for any more. Would it be ineffective for counsel not to make that request? At that point, I don't think it would be because he would have the Arno case saying that he's not entitled to that because he hadn't surrendered his bond. So at that point, it's too late, at least for a trial counsel. So I don't think it's ineffective for that. I think it's just for not surrounding it earlier. And, you know, I finally just would point out that people versus Dupree, which is cited in my brief and discussed in the state's brief as well, doesn't use the words ineffective assistance of counsel, and it doesn't engage in the Strickland analysis. Actually, essentially it holds what I'm asking this court to hold. They find that it would, you know, behoove defense counsel to have surrendered the defense bond. They find that it was a mistake by defense counsel not to surrender the defense bond. And then they go on and reward the defendant credit that he would have received had counsel surrendered the bond. So this is essentially asking this court to just do the same thing that the Fifth District did in Dupree and that this court did in Centennial. Unless there are any further questions. No. Thank you, Mr. Hamel. Ms. Myrtle. At least the court counsel. I'll be brief, but what I'd like to say is all your questions today seem to lead me to the belief that this should have been up on a post-conviction. That's where you figure out how much time he's entitled to. That's where you figure out whether counsel did a strategical decision. That's the proper place to raise this, and that's what I'd argued originally in my brief, and I still believe that's probably true. We're talking about whether or not counsel made a strategical decision. The facts we know is on June 7th the defendant posted bond, and I have June 28th as the date he wrote a letter from Pinckneyville. July 5th, apparently defense counsel was sent a letter from the circuit clerk saying defendant was in custody. October 26th, defendant appears with Attorney Ham, private counsel. That's the first we know for sure that counsel knows defendant's in custody. That's October 26th. We don't know what his agreement with Ham is for representation. We can look at the bond sheet in the record, and we can see a woman's signature on that bond sheet. It's not the defendant who posted bond by himself. Somebody posted bond for him. You can read the record to say that. You can find that out in post-conviction, hearing exactly what happened. That woman may have said, I posted your bond, but I'm not just giving you that money. So he said, let the bond stand, Mr. Ham. She'll agree to a bond assignment. We don't know. That could well have been what happened. Did Mr. Ham act improperly in allowing the defendant the right to hire private counsel if he could afford to do it, and this woman was willing to give him the money to do it? That's for post-conviction, for you to decide that on post-conviction when you have the facts. We don't know what happened. We have no way of knowing. All we know is that some woman signed that bond paper, and that on the date of trial, February 6th, the defendant filed an assignment of bond to his attorney for $3,500 for value receipt. That's all we know. And we can't find out the facts going behind that unless we have a post-conviction hearing where the evidence is brought forth. Counsel today says, well, he could have had that money, and then he could have used it to hire counsel. Well, how do we know that? Defendant tell him that? Say, she would have given me that money to hire counsel? And we know if he surrendered his bond, he would have had the money kept out by the clerk for the 10%. That would have been automatic, so he'd been short $350. So we know that much. We also don't know in this case, and I've argued it in my brief too, we don't know besides the bond, besides whether or not it was the attorney that he could have hired, it's unclear when his MSR was up. He was on MSR. I don't know how long his MSR was for. You don't know how long his MSR was for. He could have had two months left of time to do it. If he had two months left, he would have been out before he came to trial on this case. If he had six months left, he could have said to his attorney, I don't want that bond money back because I think that we're going to get this case continued. They move for continuance, which was denied, and I'll be out on the MSR. I'll be out and ready for trial and ready to help you. We don't know any of that. How many years was he sentenced to on this thing? On this case? The underlying case here. I'm thinking about it again. 23-year term. Okay. As an armed, habitual criminal offense. So he's still got time to bring a PC, right? Yeah. He still has time to bring a PC. And if he raises this in the PC, he won't serve one more day in jail. Exactly. And that's where it belongs, is in a PC. Because we don't have the facts. And I argued that in my original brief, that a PC is the place where this should be raised. Then you have the facts. You don't know why counsel did that, and you're just speculating. If you get a PC, you can find out why. And that's what I would ask the court to do, is send it back, say the PC is where this is belonging. If you have any questions, I'd be happy to answer. Thank you. Mr. Hamill? A couple quick points. First of all, with the speculation about maybe there was a woman who signed the bond sheet who posted the bond but wouldn't allow the defendant to use the bond to pay for an attorney, I point out in my reply brief that when you sign a bond sheet, the bond sheet says in the bond two points larger than the rest of the fund. This is why it can be used for attorney fees. Secondly, it doesn't really make sense that she would consent to a bond assignment to pay the attorney but not consent to use the cash to pay for the same attorney. And that's where it goes with every one of these reasons that can get brought up. Maybe it was this, maybe it was that, but every one of these reasons ends up not really panning out when you look at them because there really is no good reason. Also, with the fact that when you surrender the bond, you get 10% less. True, but if you don't surrender the bond for a trial, you get 10% less plus the fines, plus the cost, plus the fees. So, again, you're better off, always better off surrendering the bond when you have the chance to. Let me ask you, if this order were tempered to read something like my dissent in Sentinel, could you live with that? In other words, decide this issue on a PC? If that were to happen, that's, like I said, the minimum, that's what my plan would do. And I don't think it's necessary to do it. I don't think that the judicial economy is served by requiring him to do it. Well, don't we have to speculate to a lot of facts, though, to get where you want us to go if we go here now? I think what we end up, what it ends up having is you don't necessarily need to speculate to all these facts because whatever the facts are, it still won't add up to a strategic reason. So, in the end, you don't really have to speculate in this case. Granted, in most cases like this, that would probably be the right remedy. Yeah, and I would just put, you know... I want to make sure I follow you. Because the MSR was a violation in this case, you're saying he was going to be in jail until the trial date? Absolutely, 100%. Well, we do know for sure that he was in jail for the MSR violation beyond this trial date. And we actually don't know how much further beyond this trial date he was going to be, or was held in. And this trial date, again, is months after the first opportunity to exonerate the defense bond. The first opportunity is seven months before the trial date, at least. It could be eight, depending on when counsel learned of it. So, he should have realized that he was going to be there for a while. And that was actually my final point I wanted to make. Unless your honors have any further questions. Thank you. Okay. Thank you, Mr. Hamel. Thank you both for your arguments here today. That will be taken under advisement. Written disposition will be issued.